FILED & JUDGMENT ENTERED

Christine F. Winchester

December 31 2025

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

Ashley Austin Edwards
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BLACK PEARL VISION, LLC, | ) | Chapter 11 |
| | ) | Case No.: 24-30928 |
| Debtor. | ) | |
| ———————————— | ) | |
| | ) | |
| BLACK PEARL VISION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | AP No.: 25-03111 |
| | ) | |
| PEARL DELTA FUNDING, LLC | ) | |
| PEARL CAPITAL BUSINESS | ) | |
| FUNDING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————— | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ADVERSARY PROCEEDING

**THIS MATTER** is before the Court upon the *Motion to Dismiss and Memorandum of Law* ("Motion to Dismiss") filed by Pearl Delta Funding, LLC ("Pearl Delta") and Pearl Capital Business Funding, LLC ("Pearl Capital," together with Pearl Delta, "Defendants"). [D.I. 9]. The Court held a hearing on the Motion to

Dismiss on November 17, 2025. Following a hearing on the Motion to Dismiss, the Court took the matter under advisement and now renders this order.

## BACKGROUND

Black Pearl Vision, LLC ("Plaintiff," together with the Defendants, "Parties") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 31, 2024 ("Petition Date"). The Plaintiff filed the complaint that initiated this adversary proceeding on August 29, 2025 ("Complaint"). [D.I. 1]. The Defendants are Delaware limited liability companies with principal places of business located in New Jersey which engage in the issuance and servicing of merchant cash advances.

The Plaintiff alleges in the Complaint that on June 28, 2023, it executed a "Revenue Purchase Agreement" with the Defendants that purported to sell $199,799.00 of Plaintiff's future receipts for a payment of $142,855.00 to the Plaintiff ("Agreement"). According to the Agreement, Defendants were to be repaid $4,994.98 each week, representing eight percent (8%) of the Plaintiff's future revenue ("Purchased Percentage"). The Agreement includes a choice of law provision that indicates it is governed by the laws of New York.[1]

The Agreement authorized the Defendants to file a UCC-1 that encumbered all assets of the Plaintiff, created an irrevocable power of attorney in favor of the Defendants, and provided for a personal guarantee of the principal of the Plaintiff. In the event of default, the Agreement purported to (1) constitute an assignment of the Plaintiff's lease of its "business premises" in favor of the Defendants and (2) the

---

[1] At this stage, the Parties do not dispute that New York law governs the Agreement.

Purchased Percentage would increase from eight percent (8%) to one hundred percent (100%) and would be drafted from the Plaintiff's bank account via Automated Clearing House ("ACH").

The Plaintiff made thirty-eight (38) weekly payments of $4,994.98 to the Defendants from June 30, 2023 to March 29, 2024. The Plaintiff also made six (6) payments of $999.00 between November 10 and November 17, 2023, and an additional payment of $4,000.00 on April 8, 2024. In total, the Plaintiff paid $199,803.24 to the Defendants over the course of two hundred and eighty-five (285) days (collectively, "Payments") The Plaintiff calculates that the annualized interest rate on the Agreement as 51.96% for that thirty-eight (38) week period.

In the Complaint, the Plaintiff asserts four claims for relief against the Defendants. The first three claims for relief seek to avoid allegedly constructively fraudulent obligations and transfers under 11 U.S.C. § 548(a)(1)(B) and recover under 11 U.S.C. § 550(a)(1) (collectively, "Avoidance Claims"). The fourth claim for relief asserts a violation of 18 U.S.C. §§ 1962(a),1962(c) and seeks recovery pursuant to 1964(c) ("RICO Claims").

In the Complaint, the Plaintiff contends that the Agreement constitutes a loan, rather than a sale of receivables, because the Defendants did not bear any risk of loss. Based upon the Agreement's asserted status as a loan, Plaintiff alleges that the Agreement violates New York usury law, making the agreement *void ab initio* and barring the recovery of principal and interest by the Defendants. The Plaintiff further argues that the Agreement, as well as the payments made under the Agreement, did

not provide reasonably equivalent value to the Plaintiff. For those reasons, the Plaintiff seeks avoidance of the Agreement and all the payments made pursuant to the same as constructively fraudulent transfers under 11 U.S.C. § 548(a)(1)(B), and recovery of the amount of the avoided transfers pursuant to 11 U.S.C. § 550(a). Again relying on the theory that the loans are unlawfully usurious, the Plaintiff also alleges that the Defendants violated 18 U.S.C. §§ 1962(a) and 1962(c) by engaging in the collection of unlawful debt.

In the Motion to Dismiss, the Defendants argue that the Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Defendants contend that (1) the Agreement is a loan, and therefore cannot be usurious; (2) even if the Agreement is a loan, usury cannot be affirmatively asserted; (3) Plaintiff's barebones money-in, money-out allegations are insufficient to state a claim for lack of reasonably equivalent value; and (4) the RICO Claims fail because the Agreement is not a loan, and because Plaintiff has failed to allege sufficient non-conclusory facts to state a claim for relief.

On November 7, 2025, Plaintiff filed a response to the Motion to Dismiss, arguing that (1) a sale of future receipts is not possible; (2) the Court can look to the Agreement to determine if it is a loan or a true sale; (3) the Agreement did not provide reasonably equivalent value to the Plaintiff; (4) payments made under an unenforceable agreement are avoidable, and (5) that the RICO Claims were properly pled ("Response"). [D.I. 15]. On November 13, 2025, Defendants filed a reply in support of the Motion to Dismiss, arguing that a sale of future receipts is possible,

that the Plaintiff misstates New York usury law, and reiterates that usury cannot be used affirmatively ("Reply"). [D.I. 16]. The Defendants also argue that the Plaintiff has no basis to recover the entire amount paid to Defendants under the Agreement.

For the reasons that follow, the Court denies the Motion to Dismiss as to the Avoidance Claims, to the extent that the Avoidance Claims rely upon a lack of reasonably equivalent value, and not an affirmative use of New York usury law. The Court further grants with leave to amend the Motion to Dismiss as to RICO Claims for failure to adequately state a claim for relief pursuant to 18 U.S.C. § 1962(c).

**DISCUSSION**

## Motion to Dismiss Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The court assumes the truth of the complaint's factual allegations but need not accept "legal conclusions" or "unwarranted inferences, unreasonable conclusions, or arguments." *In re Hickory Printing Grp., Inc*, 469 B.R. 623, 625 (Bankr. W.D.N.C. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The court must also "draw all reasonable

inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011).

## Loan versus Sale

Plaintiff's claims of usury under New York law rely upon the Agreement constituting a loan, and not a sale. *Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 744 (1992) ("[u]sury laws apply only to loans. . . . If the transaction is not a loan, there can be no usury, however unconscionable the contract may be."). Characterizing a merchant cash advance agreement as a loan is an extensive fact-sensitive inquiry, for which New York's highest court has not yet set forth a controlling framework. *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 247 (S.D.N.Y. 2022); *CAP CALL, LLC v. Foster* (*In re Shoot the Moon, LLC*), No. 2:15-bk-60979-WLH, 2020 Bankr. LEXIS 3157, at *7-8 (Bankr. D. Mont. Nov. 6, 2020) (citations omitted) (listing factors). Accordingly, distinguishing loan versus sale may not be appropriate for the court to decide at the motion to dismiss stage. *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) ("importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."); *In re Shoot the Moon, LLC*, 2020 Bankr. LEXIS 3157, at *20; *see also Powercap Partners LLC v. Beaux Equities LLC*, 77 Misc. 3d 1221(A), 179 N.Y.S.3d 894 (N.Y. Sup. Ct. 2023) (quoting *Abir v. Malky, Inc.*, 873 N.Y.S.2d 350, 354 (N.Y. App. Div. 2009)) ("Whether a transaction constitutes a cover for usury is a question of fact and, 'when determining whether a transaction constitutes a usurious

loan it must be considered in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it.'").

As a preliminary matter at this stage in the case, the Court finds that the Plaintiff has adequately pled facts that plausibly support that the Agreement is a loan. The Complaint sets forth that the Defendants (1) bore no risk of loss under the Agreement by securing an absolute right to repayment, (2) the reconciliation provision was illusory, and (3) the Purchased Percentage had no relationship to the Plaintiff's actual sales. While it may be determined at a later stage that the Agreement constituted a sale, for the purposes of the Motion to Dismiss, the Court finds that the Plaintiff has adequately pled that the Agreement may be a loan. Therefore, at this stage, Plaintiff may rely on the Agreement's status as a loan to support its Avoidance Claims and RICO Claims.

## First, Second and Third Claims for Relief - Avoidance Claims

The first and second claims for relief in the Complaint are brought pursuant to 11 U.S.C. § 548(a)(1)(B) for the purpose of avoiding constructively fraudulent transfers. A constructively fraudulent transfer under 11 U.S.C. § 548(a)(1)(B) is defined as one where "(1) the debtor was insolvent,[2] and (2) the debtor received 'less than a reasonably equivalent value in exchange.'" *French v. Liebmann* (*In re French*), 440 F.3d 145, 150 (4th Cir. 2006) (quoting 11 U.S.C. § 548(a)(1)(B)). The trustee or

---

[2] In the alternative to insolvency, § 548 permits a debtor to plead that the debtor "(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business. § 548(a)(1)(B)(i). The Plaintiff has also pled elements (II) and (III) here.

debtor-in-possession may avoid a constructively fraudulent transfer "that was made or incurred on or within 2 years before the date of the filing of the petition." 11 U.S.C. § 548(a)(1). The Plaintiff's third claim of relief is pursuant to 11 U.S.C. § 550, which provides a mechanism to recover the transfer avoided by § 548 for the benefit of the estate.

The Complaint alleges that at the time the Plaintiff made the Payments, the Plaintiff was insolvent, or became insolvent as a result of the Payments. Further, the Parties entered into the Agreement on June 28, 2023, and all the Payments were made between June 30, 2023 and April 8, 2024, dates which fall within two (2) years of the Petition Date. Thus, the only outstanding element under 11 U.S.C. § 548 is whether the Plaintiff received less than a reasonably equivalent value in exchange for the Payments.

In the Complaint, the Plaintiff alleges that both the Agreement itself, as well as the Payments, did not provide reasonably equivalent value. Under the first claim for relief, The Plaintiff argues that because the annualized interest rate of the Agreement is approximately 51.96%, it is *void ab initio* pursuant to N.Y. Gen. Oblig. Law § 5-511, which voids criminally usurious contracts, i.e. contracts with an interest rate exceeding twenty-five percent (25%) per annum. Alternatively, the Plaintiff argues that the Agreement is unenforceable pursuant to New York usury law, and an unenforceable debt cannot provide reasonably equivalent value.

As to the second claim for relief, the Plaintiff claims that the difference the Payments and what the Plaintiff received under the Agreement should be avoided for

lack of reasonably equivalent value. The Defendants argue that New York law does not permit the affirmative use of usury, and therefore it cannot be used as a basis for the Plaintiff to void or avoid the Agreement. The Defendant further counters that Plaintiff's barebones money-in, money-out allegations are insufficient to state a claim for lack of reasonably equivalent value.

To the extent that the Plaintiff attempts to affirmatively use New York usury law, the Court agrees with the Defendants that this is an improper basis for Plaintiff's Avoidance Claims. It is well settled, as this Court discussed in *Martinez Quality*, that New York law only permits criminal usury to be asserted as a defense by a corporation, and never as a means to seek affirmative relief. *Martinez Quality Painting & Drywall, Inc. v. Newco Cap. Grp. VI, LLC* (*In re Martinez Quality Painting & Drywall, Inc.*), No. 22-30357, 2025 WL 828882, at *7-8 (Bankr. W.D.N.C. Mar. 14, 2025); *K9 Bytes, Inc. v. Arch Capital Funding*, LLC, 2017 NY Slip Op 27166, 56 Misc. 3d 807, 57 N.Y.S.3d 625 (Sup. Ct.); *Azalea Gynecology, P.A. v. GFE NY, LLC* (*In re Azalea Gynecology*), No. 24-00109-5, slip op. at 7 (Bankr. E.D.N.C. Dec. 6, 2024). Put simply, corporations may only use the criminal usury statute as shield, and not a sword. *Zoo Holdings, LLC v. Clinton*, 814 N.Y.S.2d 893, 893 (N.Y. Sup. Ct. 2006).

In the bankruptcy context, where a Defendant has not filed a proof of claim or otherwise participated offensively in the Plaintiff's underlying bankruptcy case, courts have held that there is no basis to use New York usury law affirmatively. *Martinez Quality*, 2025 WL 828882, at *7-8; *Anderson v. Secure Cap., LLC* (*In re Chadley Mgmt.*), No. 24-06029, slip op. at 3-4 (Bankr. M.D.N.C. Jun. 9, 2025); *Azalea*

*Gynecology*, slip op. at 8. Here, the Defendants have not filed a proof of claim or made any other appearance in the Plaintiff's bankruptcy case that could be interpreted as an attempt to collect a debt. However, the Plaintiff attempts to use N.Y. Gen. Oblig. Law § 5-511 affirmatively, both to void the Agreement and provide a basis for lack of reasonably equivalent value. The Court cannot find support for the proposition that N.Y. Gen. Oblig. Law § 5-511 is somehow exempt from New York's well-settled principal of limiting corporations to the defensive use of usury. New York usury law, both civil and criminal, is intrinsically connected. *See Adar Bays, LLC v. GeneSYS ID, Inc.*, 179 N.E.3d 612, 616 (N.Y. 2021). N.Y. Gen. Oblig. Law § 5-511 provides that when a successful usury *defense*, based on the criminal usury rate, is raised by a corporate borrower, the usurious loan is void. *Adar Bays*, 179 N.E.3d at 620-21. Accordingly, for the same reasons that Plaintiffs cannot affirmatively raise a criminal usury claim, their claim under N.Y. Gen. Oblig. Law § 5-511 similarly fails.

Alternatively, the Plaintiff asks the court to avoid the incurrence of the Agreement and the Payments for lack of reasonably equivalent value under 11 U.S.C. § 548. As explained in *Martinez Quality*, "the analysis for reasonably equivalent value requires considering the net benefit to the debtor and not simply the amount the debtor transferred to a certain party." *Martinez Quality,* 2025 WL 828882, at *8 (Bankr. W.D.N.C. Mar. 14, 2025) (citation omitted). "[T]his Court has set forth a two-part test to assess reasonably equivalent value under section 548: '(1) Did the debtor receive value, and (2) was the payment reasonably equivalent to the value extended?'" *Id.* at *9 (citation omitted). "In analyzing fraudulent conveyances, the test is whether,

10

as a result of the transactions, the debtor's estate was unfairly diminished." *Id.* (citation omitted).

Taking the factual allegations in the Complaint as true, the Plaintiff paid to the Defendants the total amount of $199,803.24, and the Plaintiff received $142,885.00. While the fact that the Plaintiff paid Defendants $55,918.24 more than it received may not definitively result in a finding a lack reasonably equivalent value given the other factors the Court references in the *Martinez Quality* case, the Court finds that the Plaintiff has sufficiently pled a lack of reasonably equivalent value for the purposes of Rule 12(b)(6).

**<u>Fourth Claim for Relief – RICO Claims</u>**

The Plaintiff alleges that the Defendant violated the relevant RICO provisions, sections 1962(a) and 1962(c), through conduct related to the collection of unlawful debt. Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C.] section 1962" may bring a civil RICO action. 18 U.S.C. § 1964(c).

Section 1962(a) of RICO provides in relevant part:

> "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code [18 USCS § 2], to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

18 U.S.C. § 1962(a). Section 1961(6) defines an "unlawful debt," as:

> "a debt . . . which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and . . .

11

> which was incurred in connection with . . . the business of lending money . . .
> at a rate usurious under State or Federal law, where the usurious rate is at
> least twice the enforceable rate."

18 U.S.C. § 1961(6). To state a claim for relief under Section 1962(a), the Plaintiff must allege that: "(1) the Defendants derived income [through the collection of an unlawful debt]; (2) the income was used or invested, directly or indirectly, in the establishment or operation; (3) of an enterprise; (4) which is engaged in or the activities of which affect interstate or foreign commerce." *Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union, et al.*, 633 F. Supp. 2d 214, 222 (E.D. Va. 2008) (citing *United States v. Vogt*, 910 F.2d 1184, 1193 (4th Cir. 1990)).

As to the first element, the Plaintiff alleges that the annualized interest rate paid pursuant to the Agreement is 51.96%, which is at least twice the enforceable rate of 25% pursuant to N.Y. Penal Law § 190.40. Further, the Plaintiff alleges that the Defendants debited payments pursuant to the Agreement from the Debtor's bank account. These facts together plausibly support that the Defendants derived income through the collection of an unlawful debt for purposes of 18 U.S.C. § 1962(a).

The second and third elements require that the Defendants used or invested relevant income in the establishment or operation of an enterprise. Section 1961(4) provides that an enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity . . . ." 18 U.S.C. § 1961(4). Proving the existence of a "legal entity" enterprise is straight forward and only requires proof of the existence of a corporation, partnership, or other legal form. *United States v. Griffin*, 660 F.2d

996, 999 (4th Cir. 1981). Proof of an "association in fact" enterprise requires a greater factual showing.

An association in fact enterprise consists of "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). This type of enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Under either theory of enterprise, the alleged enterprise need not be separate from, and may be identical to, the "person" against whom a § 1962(a) claim is made. *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 841 (4th Cir. 1990). Accordingly, the Plaintiff may satisfy its burden under Rule 12(b)(6) by pleading sufficient factual content demonstrating that the Defendants used or invested income from the unlawful collection of debt in the establishment or operation of either or both of themselves as limited liability companies.

In the Complaint, the Plaintiff alleges that the Defendants are both Delaware limited liability companies. The Plaintiff also alleges that the Defendants use the proceeds derived from the allegedly usurious loans to invest in its operations in order to issue more usurious loans to businesses across the country. Based upon these facts and at this stage, it is plausible that the Defendants used or invested the unlawfully derived income in the operation of an enterprise, thus satisfying the second and third elements of § 1962(a) for the purposes of Rule 12(b)(6).

The fourth element requires the Plaintiff to plead that the alleged enterprise is engaged in or affects interstate commerce. In the Fourth Circuit, a Plaintiff need only show an enterprise had a "de minimis" effect on interstate or foreign commerce for the purposes of RICO. *See United States v. Barronette*, 46 F.4th 177, 203 (4th Cir. 2022); *see also United States v. Zelaya*, 908 F.3d 920, 926 (4th Cir. 2018). Here, the Plaintiff alleges that Defendants are incorporated in Delaware, have principal places of business located in New Jersey, and provided financing via the Agreement to the Plaintiff, who is located in North Carolina. The Plaintiff further alleges that the Defendants engage in merchant cash advance funding with businesses across the country. These allegations are sufficient to satisfy the fourth and final element of 18 U.S.C. § 1962(a) for the purposes of Rule 12(b)(6). Thus, the Court finds that the Complaint contains factual allegations sufficient to establish each element of 18 U.S.C. § 1962(a) to state a plausible claim for relief.

However, the Plaintiff's claim pursuant § 1962(c) is not similarly successful. Section 1962(c) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce" from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To successfully plead a section 1962(c) claim, the Plaintiff must allege both an enterprise and the existence of a person, who violated 18 U.S.C. § 1962(c) by his or her association with and participation in the enterprise. *See Cedric*

*Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-62 (2001); *Busby,* 896 F.2d at 841.

Critically, for the purposes of § 1962(c), in contrast to § 1962(a), Plaintiffs must allege "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). In other words, the "enterprise" cannot also be the "person" alleged to have violated the statute. *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997). If the Plaintiff fails to plead the person and enterprise element with the requisite specify and distinctness, dismissal of the claim is appropriate. *See Parker v. Kreitzer*, Civil Action No. 5:24-cv-00060, 2025 U.S. Dist. LEXIS 180201, at *33-35 (W.D. Va. Sep. 15, 2025) (dismissing a §1962(c) claim for Plaintiff's failure to plead with specificity which parties were the "person(s)" and which parties made up the alleged enterprise).

In the Complaint, the Plaintiff alleges that each Defendant is a "person" within the meaning of §1961(3). The Response alleges that the Defendants are enterprises, both under the corporate entity theory and association in fact theory.[3] Further, when describing the allegations pursuant to § 1962(c), the Plaintiff primarily refers to Pearl Delta and Pearl Capital together as "Defendants," without distinction. The Plaintiff provides no further detail, leaving the Court and the Defendants to guess which entity is the is the person and which entity is the

---

[3] Even if the allegations in the Response cured the deficiencies of the §1962(c) claim such that it could survive Rule 12(b)(6), it is well-established that a party may not amend its pleadings through briefing. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184-85 (4th Cir. 2013). Thus, it would be more appropriate for the Plaintiff to amend its Complaint to state a plausible claim for relief.

15

enterprise. To the extent that Plaintiff contends that one of the corporate defendants is an enterprise within the meaning of RICO, the corporate defendant may not also be found liable as a "person" under Section 1962(c). *See New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1163 (4th Cir. 1994); *Busby*, 896 F.2d at 840; *Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 29-30 (1st Cir. 1986) (collecting cases). Ultimately, Plaintiff has failed to adequately plead with specificity which of the Defendants is the "person" and which is the "enterprise" for the purposes of §1962(c), and therefore the § 1962(c) claim cannot survive Rule 12(b)(6). The Court, therefore, will dismiss the RICO Claims without prejudice, noting that if the Plaintiff amends its RICO Claims, it must plead facts sufficient to demonstrate a distinct "person" and "enterprise" for the purpose of § 1962(c).

## CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The Motion is **<u>DENIED</u>** as it relates to the Avoidance Claims.

2. The Motion is **<u>GRANTED</u>** with leave to amend as it relates to the RICO Claims.

**IT IS FURTHER ORDERED** that the Plaintiff may file an amended complaint within twenty-one (21) days from the date of entry of this order.

**SO ORDERED**.

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court